CARLOS ARMSTRONG E HIJOS SUCRS., INC., demandante y recurrida, *v.* INTER–AMERICAN BUILDERS, INC., CONSTRUCTORA DE PONCE, INC., y ASOCIACIÓN DE MAESTROS DE PUERTO RICO, demandadas y recurrente la última.

*Número:* R-67-203          *Resuelto:* 2 de marzo de 1970

*José Raúl Cancio,* abogado de la recurrida Asociación de Maestros de Puerto Rico; *Antonio Sabater Cajigas,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Vuelve a nuestra consideración la determinación de los derechos del suplidor de un contratista en contra del dueño de la obra bajo el Art. 1489 del Código Civil, 31 L.P.R.A. sec. 4130, que le así:

"Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista, no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación."

La variación en este caso consiste en que con posterioridad a la radicación de la demanda presentada en este caso por la suplidora en contra de los contratistas y el dueño de la obra, los contratistas cedieron su crédito contra la recurrente, dueña de la obra, a la American Surety Co. mediante documento autenticado ante notario. Debe resolverse entonces la cuestión de si en vista de tal cesión, debía o no prosperar la reclamación de la suplidora en contra de la dueña de la obra.

No hay controversia en cuanto a los hechos. La demanda del suplidor en este caso en contra de los recurrentes se radicó en 27 de abril de 1961 alegando que los contratistas adeudaban a la recurrida $21,688.58 por concepto de materiales suplidos por obras de la recurrente Asociación de Maestros; que a la fecha de la reclamación ésta adeudaba a los contratistas recurrentes sumas en exceso de dicho crédito y que se condenara a dicha Asociación a pagar el referido importe a la recurrida. Inter-American Builders, uno de los contratistas, no contestó y se anotó su rebeldía. La Asociación negó los hechos y Constructora de Ponce, la otra contratista, alegó que la deuda de la suplidora estaba reducida a $13,688.58. La Asociación radicó demanda de tercero contra la American Surety ·of N.Y., fiadora del contratista, pero no se realizó trámite ulterior alguno con respecto a la misma.

Este caso fue consolidado con el caso Núm. 63-705 de Cobro de Dinero (683?) seguido por American Surety Co. como cesionaria de los contratistas, contra la Asociación en el Tribunal Superior, Sala de San Juan, a los efectos de que

se llevase a cabo un arbitraje con respecto a la procedencia y cuantía de las reclamaciones de American Surety Co. y de la recurrida. El laudo en dicho arbitraje rendido en 23 de septiembre de 1966, ordenó a la Asociación a pagar a American Surety Co. la cantidad de $22,260.02 "toda vez que la Asociación de Maestros retuvo del pago total del contrato de construcción la cantidad de $43,075.11 y toda vez que dicha Asociación está justificada en reabrir un crédito de $20,851.-09." En virtud de dicho laudo el Tribunal Superior, Sala de San Juan, dictó sentencia en 17 de marzo de 1967 en el caso Núm. 63-705, condenando a la Asociación de Maestros a pagar los $22,260.02 a American Surety Co. De esta sentencia se dio conocimiento al Tribunal Superior, Sala de Ponce, en 14 de marzo de 1967. Con respecto al caso ante nos, el laudo proveyó que "Toda vez que el caso no envuelve aspectos de ingeniería y sí aspectos legales relacionados con las formas y otras facturas, el panel de árbitros entiende que no es de su competencia el arbitrar dicho caso." Rendido dicho laudo el tribunal de instancia ordenó en 25 de noviembre de 1966 que se devolvieran los autos del caso ahora ante nos por la Sala de San Juan a la Sala de Ponce y se señaló el caso para la vista en sus méritos.

En la conferencia con antelación al juicio, las partes estipularon que:

1. la suma reclamada por la recurrida asciende a $13,908.58.

2. la Asociación fue emplazada en 27 de abril de 1961 y admitió todos los hechos de la demanda.

3. no se trabó embargo alguno en este caso.

4. los contratistas recurrentes cedieron sus créditos con la Asociación a la American Surety Co. en 11 de octubre de 1961.

5. se admitió en evidencia copia del referido laudo.

El tribunal de instancia concluyó en su opinión y sentencia de 17 de febrero de 1968 que:

1.—"Forzoso es concluir . . . que a partir de la fecha de la radicación de la demanda de autos la demandante se convirtió en acreedora de la Asociación de Maestros y ésta en su deudora, hasta el montante del crédito reclamado, e igualmente se redujo en igual extensión el crédito que contra la Asociación de Maestros tenía la firma contratista, produciéndose así el desplazamiento patrimonial indirecto a que se refiere el autor Mart en su citado artículo.

2.—"En lo que respecta a este pleito, el laudo no contiene adjudicación alguna en lo pertinente al efecto del caso sobre los respectivos derechos de las partes."

En tal virtud, el tribunal de instancia dictó sentencia a favor de la recurrida condenando a la recurrente Asociación a pagarle la suma de $13,908.56 más intereses al tipo legal desde la radicación de la demanda.

Apuntan los recurrentes que el tribunal de instancia incidió al concluir que a la Asociación le resta satisfacer a los contratistas un balance de $22,260.22 por lo que la condenó a pagar a la recurrida la suma de $13,908.58 más intereses y al no concluir, en contrario, que procedía condenarla a pagar dicha suma con cargo a aquellas sumas que, de acuerdo con el laudo arbitral y la sentencia en el caso Civil Núm. 63-705, la Asociación venía obligada a pagar a los contratistas o su cesionaria; que la sentencia parece indicar que la Asociación viene obligada a pagar la referida suma de otros fondos que no son los adeudados a los contratistas codemandadas; que también incidió al condenarla a pagar intereses.

De entrada es necesario aclarar que aparece en el récord copia de la sentencia de 17 de febrero de 1967 en el caso Núm. 63-705 que condena a la Asociación a pagar $22,260.22 a la American Surety Co., la reclamante en dicho caso, a la cual los contratistas cedieron el crédito que la Asociación les adeudaba. No aparece en el récord que ". . . el Tribunal

Superior, Sala de San Juan, dictó orden y mandamiento ordenando a la Asociación a que no pagara, transfiriera o dispusiera de los créditos que a su favor tuviere la Southern Builders, Inc. y dos de sus subsidiarias por las cantidades de $70,386.49; $8,000 y $48,000 . . ." que ". . . la recurrente Asociación con fecha 8 de junio de 1967, consignó el importe de la sentencia en el Tribunal, sujeto al derecho que pudiera tener el Estado Libre Asociado" y que "Todavía no ha habido disposición final en el caso." Véase, *American Surety Co.* v. *Tribunal Superior*, 97 D.P.R. 452 (1969).

En síntesis, arguyen los recurrentes que el Art. 1489 del Código Civil instrumenta la norma básica de subrogación que concede el Art. 1064 (31 L.P.R.A. sec. 3028); [1] que dicha disposición permite a los suplidores y operarios perseguir directamente la parte del precio de la obra impagada por el dueño y los exonera de perseguir bienes en poder de su deudor (contratista o empresario); que no lo exonera de nada más ni le otorga más privilegio; que dicha disposición no coloca al suplidor en mejor posición que el contratista frente al dueño; que tiene acción en tanto haya cantidad reclamable por el contratista en la medida y extensión que ésta exista; que la cantidad adeudada por el dueño de la obra al contratista no adquiere liquidación hasta que se liquide el contrato con el dueño, es decir, dicha cantidad es la que resulte después de ajustarse las reclamaciones recíprocas que puedan existir entre las partes; que la liquidación del crédito se hizo en el arbitraje al que se negó a comparecer el suplidor; que el tribunal de instancia parece creer que la mera radicación de la demanda del suplidor constituye

---

[1] El Art. 1064 del Código Civil provee que:

"Los acreedores después de haber perseguido los bienes de que esté en posesión el deudor para realizar cuanto se les debe, pueden ejercitar todos los derechos y acciones de éste con el mismo fin, exceptuando los que sean inherentes a su persona; pueden también impugnar los actos que el deudor haya realizado en fraude de su derecho."

un secuestro o embargo de lo adeudado por el dueño al contratista; que dicha cantidad no se embargó en este caso; que la interposición de la demanda del suplidor no convierte la deuda del dueño al contratista en un crédito de naturaleza preferido y asegurado para el suplidor; que correspondía a la recurrida traer al pleito a dicho cesionario; que al no hacerlo no puede dictarse sentencia alguna que afecte su cesión; que, "La cuestión de cesión de crédito tenía que suscitarse en pleito plenario, y no podía ser resuelta colateralmente, como pretende hacerlo el juez de instancia, fundándose en que de la estipulación, esto es, de la prueba que tuvo ante sí, aparecía que la cesión de crédito por las codemandadas contratistas se hizo con posterioridad a que se interpusiera la presente acción . . . nadie puede estipular en perjuicio de tercero sin el consentimiento de éste. La sala sentenciadora afecta el derecho de una parte que no estuvo presente en la controversia."

Alegan los recurrentes, además, que habiendo recaído sentencia en el caso Núm. 63-705, el Tribunal Superior, Sala de Ponce, "estaba impedido de dictar sentencia con cargo al dinero retenido. Y éste había sido consumido en virtud de la sentencia anterior dictada por el mismo tribunal, Sala de San Juan. Ya no estaba disponible por la demandante-recurrida. Tampoco podía . . . dictar sentencia contra la recurrente con cargo a su propio y particular peculio. Procedía la desestimación de la demanda."

A los fines de determinar los derechos de las partes, los hechos previamente expuestos deben considerarse a la luz del estado de derecho que pasamos a relacionar.

1.—El laudo arbitral en cuestión no dispuso de la cuestión de derecho planteada en este caso.

2.—En *American Surety Co.* v. *Tribunal Superior*, supra, expusimos el estado de derecho de los materialistas que radi-

can acción en contra del dueño de una obra bajo el art. 1489 del Código Civil.

■ 3.—Al radicar su acción en contra del dueño de la obra para cobrar lo que el contratista o empresario le adeuda por concepto de materiales suplidos y usados en la obra, tal derecho de cobrar está limitado en dos extremos:

a. a la cantidad que le adeude el dueño de la obra al contratista bajo el contrato de tal construcción cuando se hace la reclamación mediante la interposición de la acción.

■ b. el suplidor no adquiere ante el dueño de la obra más derechos que los que tenía el contratista, de manera que la cantidad adeudada está sujeta necesariamente a liquidación por razón de reajustes o posibles reclamaciones recíprocas que surjan en relación con la obra contratada entre el contratista empresario y el dueño de la misma. Sin embargo, tales reajustes no incluyen la variación del precio del contrato de construcción por convenio privado entre el contratista y el dueño de la obra en perjuicio de los que suministran materiales. *Sentencia del Tribunal Supremo de España de 11 de junio de 1928.*

■ c. El Art. 1489 del Código Civil crea un derecho a manera de refacción o retención que no puede eludir ningún dueño de obras en tanto en cuanto sea deudor del contratista. *Sentencia del Tribunal Supremo de España de 30 de junio de 1929.*

d. Aunque los suplidores no tienen una preferencia sobre el crédito del empresario el cual es al mismo tiempo una deuda del dueño de la obra, el derecho de los suplidores se hace eficaz con la reclamación; "entonces surge el entredicho; a partir de ese momento el dueño se hace deudor de los suplidores y cesa de serlo del contratista" Scaevola, *Código Civil*, t. XXIV, pág. 170. Dice Laurent que "Esta disposición [similar a la del art. 1489 de nuestro Código Civil] consti-

tuye una garantía para los industriales que trabajen por un contratista . . . pero tal garantía es mayor para quien anticipa sus reclamaciones." Laurent, *Principios de Derecho Civil Francés*, t. 27, págs. 95 y 96.

■ 4. Dice Manresa que "el contratista puede ceder su crédito contra el dueño. Si esta cesión se hace *antes* de que los obreros o abastecedores de materiales hayan intentado su acción, esta cesión les perjudicará . . . ." *Código Civil Español*, 5ta. ed., vol. 10, pág. 935.

La situación en el caso que nos ocupa es que (1) la acción del suplidor en contra del dueño de la obra se radicó y se notificó a este último en abril de 1961, o sea, meses antes de llevarse a cabo la cesión (en octubre de 1961); (2) a través del arbitraje se determinó que el contratista tenía un crédito liquidado y preciso proveniente del contrato de construcción de la obra para la cual la recurrida suplió materiales; (3) la sentencia a favor de la cesionaria cuyo derecho se caracteriza como un crédito de un materialista u operario (*American Surety Co.* v. *Tribunal Superior*, supra) era del conocimiento del tribunal de instancia antes de dictar su sentencia en este caso; (4) la sentencia a favor de la cesionaria se dictó con anterioridad a la sentencia dictada en este caso.

■ La radicación de la acción del materialista en el caso que nos ocupa, la cual se llevó a cabo con anterioridad a la acción de la referida cesionaria, produjo "el importantísimo efecto de sustraer el importe de lo reclamado por el . . . materialista de las reclamaciones de otros acreedores del contratista, pues desde ese instante en que se hace la reclamación al dueño, éste se convierte en deudor de los . . . materialistas del empresario." Desde ese momento el materialista en el caso que nos ocupa se convirtió en acreedor directo de la Asociación como dueña de la obra y "su crédito no está sujeto a los vaivenes de las responsabilidades del

contratista por otros conceptos." *American Surety Co.* v. *Tribunal Superior*, supra.

■ En tal virtud, era obligación de la Asociación alegar en la acción de la cesionaria la existencia de su relación con la recurrida proveniente de la anterior acción radicada en su contra por ésta, y que al depositar en el tribunal de instancia el balance que aún adeudaba a los contratistas debía satisfacerse primero la reclamación de la recurrida. Esto no lo hizo la Asociación recurrente oportunamente.

■ Concluimos, por lo tanto, que el tribunal de instancia no incidió en su dictamen en este caso. Procede el pago de los intereses devengados desde la fecha en que se radicó la acción por la recurrida pues del récord aparece que para esa fecha la Asociación recurrente sabía que del precio de la obra adeudaba a los contratistas una suma mayor que la reclamada en la referida acción. El pago de tales intereses pudo evitarse mediante la correspondiente consignación y la radicación y procesamiento de la demanda de tercero contra la cesionaria, como fiadora que era de los contratistas.

Ahora bien, en caso que no se hubiere dispuesto de la suma consignada por la Asociación en el caso Núm. 63-705 de la Sala de San Juan y del tribunal de instancia, procede satisfacer de esa suma, primeramente el principal de la reclamación de la recurrida de acuerdo con la sentencia dictada en el caso que nos ocupa. Los intereses sobre dicho principal a que se refiere la referida sentencia se han concedido debido a la mora de la Asociación recurrida y por lo tanto corresponde sólo a ésta el satisfacerlos en su totalidad. Del balance restante se satisfará, hasta donde alcance, el crédito de la cesionaria. En caso que se hubiere pagado este último crédito y el balance restante no fuere suficiente para satisfacer en su totalidad el monto de la sentencia dictada en el caso ante nos, la Asociación quedará obligada a satisfacer

el monto o cualquier balance insoluto de la referida sentencia a la recurrida.

El Señor Juez Presidente y el Juez Asociado Señor Dávila no intervinieron.