EL TORO ELECTRIC CORP., demandante y recurrida, *v.* AUGUSTO A. ZAYAS CINTRÓN, CONSTRUCTORA ZAYAS, INC., FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO, JOHN DOE, demandados y recurrente la tercera.

*Número:* R-77-59          *Resuelto:* 31 de mayo de 1977

*Baralt, Miranda & Ledesma,* abogados de la First Federal Savings and Loan Association of Puerto Rico, recurrente; *Wilfredo Colón Pagán,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Bajo el Art. 1489 del Código Civil[1] y nuestra doctrina:[2] ¿es responsable un acreedor que provee financiamiento al dueño de una obra en construcción, de las deudas

---

[1] Reza así:

"Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista, no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquel cuando se hace la reclamación." (31 L.P.R.A. sec. 4130.)

[2] Según expuesta en las siguientes decisiones: *Empresas Capote, Inc.* v. *Tribunal Superior,* 103 D.P.R. 765 (1975) ; *Armstrong Etc.* v. *Inter-Amer.*

incurridas por el contratista principal en concepto de mano de obra y materiales suplidos por un sub-contratista antes del acreedor hacerse cargo de la obra?

La sinopsis de acontecimientos que motivan esta interrogante son: como urbanizadora, Constructora Zayas, Inc., contrató con El Toro Electric Corp., la instalación del sistema eléctrico de un proyecto que desarrollaba denominado Villa del Río en Guayanilla, Puerto Rico, garantizando su pago mediante pagaré. Al no serle satisfecho lo adeudado por obra parcial, El Toro Electric Corp. paralizó y se negó a terminarla. Extrajudicialmente se hicieron reclamaciones recíprocas. El Toro Electric Corp. demandó a Constructora Zayas, Inc., por la suma de $14,097.80, y entre otros, al First Federal Savings & Loan Association of Puerto Rico, acreedor de la constructora en virtud de un préstamo de dinero efectuado originalmente para la construcción del proyecto, y el cual ante las dificultades económicas del constructor, como medida para asegurar su crédito, se hizo cargo de completar su desarrollo.

El Tribunal Superior, Sala de Ponce, contestó en la afirmativa la pregunta enunciada y condenó al First Federal a satisfacer la suma de $14,097.80, costas y $700.00 de honorarios de abogado, más intereses por temeridad. La ilustrada sala sentenciadora estimó que la acción incoada era una auténtica de enriquecimiento injusto (*actio in rem verso*) debido a que el First Federal se benefició de la ejecución parcial de la obra y además, aun cuando no se trataba de una ". . . fianza prestada para asegurar el cumplimiento de un contrato y sí repito—de que la tercera tenedora de un préstamo (First Federal) se hizo cargo del proyecto para cobrar su crédito, le aplica[ba]—lo resuelto en *International Gene-*

---

*Builders, Inc.,* 98 D.P.R. 734 (1970) ; *Amer. Surety Co.* v. *Tribunal Superior,* 97 D.P.R. 452 (1969) ; *C. Armstrong e Hijos* v. *Díaz,* 95 D.P.R. 819 (1968) ; *Ferrer* v. *Alliance Co. of P.R.,* 93 D.P.R. 1 (1966) ; *A. L. Arsuaga, Inc.* v. *La Hood Const., Inc.,* 90 D.P.R. 104 (1964).

*ral Electric* v. *Concrete Builders of P. R.*, R-76-48, de 19 de mayo de 1976 [104 D.P.R. 871 (1976)] . . . ." Ante la revisión presentada por First Federal, emitimos orden de mostración de causa para que la demandante recurrida El Toro compareciera y expusiera razones por las cuales no debiéramos expedir y revocar.

El estado de derecho que hemos pautado al amparo del mencionado Art. 1489 del Código Civil no nos permite extenderlo a la situación fáctica de autos. *Armstrong*, supra, resume adecuadamente los derechos y limitaciones de esta acción:

"En *American Surety Co.* v. *Tribunal Superior*, supra, expusimos el estado de derecho de los materialistas que radican acción en contra del dueño de una obra bajo el art. 1489 del Código Civil.

Al radicar su acción en contra del dueño de la obra para cobrar lo que el contratista o empresario le adeuda por concepto de materiales suplidos y usados en la obra, tal derecho de cobrar está limitado en dos extremos: a. a la cantidad que le adeude el dueño de la obra al contratista bajo el contrato de tal construcción cuando se hace la reclamación mediante la interposición de la acción. b. el suplidor no adquiere ante el dueño de la obra más derechos que los que tenía el contratista, de manera que la cantidad adeudada está sujeta necesariamente a liquidación por razón de reajustes o posibles reclamaciones recíprocas que surjan en relación con la obra contratada entre el contratista empresario y el dueño de la misma. Sin embargo, tales reajustes no incluyen la variación del precio del contrato de construcción por convenio privado entre el contratista y el dueño de la obra en perjuicio de los que suministran materiales. . . . c. El Art. 1489 del Código Civil crea un derecho a manera de refacción o retención que no puede eludir ningún dueño de obras en tanto en cuanto sea deudor del contratista. . . . d. Aunque los suplidores no tienen una preferencia sobre el crédito del empresario el cual es al mismo tiempo una deuda del dueño de la obra, el derecho de los suplidores se hace eficaz con la reclamación; 'entonces surge el entredicho; a partir de ese momento el dueño se hace deudor de los suplidores y cesa de serlo del contratista' Scaevola, *Código Civil*, t. XXIV, pág. 170 . . . . La radicación de la acción del materialista en el caso

que nos ocupa, la cual se llevó a cabo con anterioridad a la acción de la referida cesionaria, produjo 'el importantísimo efecto de sustraer el importe de lo reclamado por el . . . materialista de las reclamaciones de otros acreedores del contratista, pues desde ese instante en que se hace la reclamación al dueño, éste se convierte en deudor de los . . . materialistas del empresario.' Desde ese momento el materialista en el caso que nos ocupa se convirtió en acreedor directo de la Asociación como dueña de la obra y 'su crédito no está sujeto a los vaivenes de las responsabilidades del contratista por otros conceptos.' " Págs. 740–743.

Resultando que la disposición de ley que nos ocupa es excepcional y taxativamente de índole limitativa, pues sólo reconoce que la acción de los suplidores y operarios será hasta la cantidad que el dueño adeude al contratista, y no poseyendo el recurrente tal condición al momento en que los servicios fueron prestados—sino la de principal acreedor—la sentencia no puede prevalecer por este fundamento. Tampoco puede sostenerse bajo la doctrina de enriquecimiento injusto, ya que para que tenga eficacia resulta ". . . necesario que la persona lesionada no tenga ninguna otra acción para obtener resarcimiento." Velázquez, G., *Las Obligaciones*, 140 (Ed. Equity 1964).[3]

*Se expide el auto. Se dictará sentencia modificando la del Tribunal Superior, Sala de Ponce, a los únicos efectos de desestimar la demanda contra la recurrente.*

El Juez Presidente Señor Trías Monge concurre en el resultado.

---

[3] Véanse además *Silva v. Comisión Industrial*, 91 D.P.R. 891 (1975) y Puig Brutau, *Fundamentos de Derecho Civil*, Tomo 2, Vol. 2, pág. 603 (1956) ; Manresa, *Comentarios al Código Civil*, Tomo 12, págs. 760 a 780 (Ed. 1973) ; Diego Espín, *Manual de Derecho Civil*, Vol. 3, pág. 466 (Ed. 1957) ; Scaevola, *Código Civil*, Tomo XXX, Vol. II, pág. 366 (Ed. 1961) ; Colin y Capitant, *Curso Elemental de Derecho Civil*, Tomo 3, pág. 939 (Ed. 1951).