ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-DJ 2024-062C

| | | |
|---|---|---|
| **JOSÉ DEL CARMEN SEGURA**<br><br>Apelante<br><br>v.<br><br>**CARLOS SANTOS; JC CONTRACTOR, INC.; CONSEJO DE TITULARES DEL CONDOMINIO THOMASVILLE PARK; CONSEJO DE TITULARES DEL CONDOMINIO CAMINO REAL; COMPAÑÍA ABC; COMPAÑÍA DE SEGURO XYZ; FULANO DE TAL y MENGANA DE TAL**<br><br>Apelados | TA2025AP00133 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Carolina**<br><br>Caso Núm.: CA2022CV01285<br><br>Sobre: Cobro de Dinero, Incumplimiento de Contrato, Acción Contra Dueño de Obra |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de octubre de 2025.

Comparece el señor José del Carmen Segura (Sr. del Carmen Segura o apelante) mediante un recurso de *Apelación* en el que nos solicita que revoquemos la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia (TPI), Sala Superior de Carolina, el 13

de junio de 2025.[1] Mediante dicho dictamen, el foro primario declaró Ha Lugar la *M[o]ci[ó]n Solicitud de Sentencia Sumaria* presentada por el Consejo de Titulares del Condominio Thomasville Park (parte apelada),[2] y, en su consecuencia, decretó el archivo de las causas de acción radicadas en contra de la parte apelada. Además, condenó al Sr. del Carmen Segura al pago de una suma de $3,000.00 en concepto de honorarios de abogados por temeridad a favor de la parte apelada.

El 26 de agosto de 2025, la parte apelada presentó un *Alegato en Oposición a Apelación.*

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia Sumaria Parcial* apelada.

## I.

El caso de marras tiene su génesis el 27 de abril de 2022 cuando el Sr. del Carmen Segura presentó una *Demanda* contra el señor Carlos Santos (Sr. Santos), JC Contractor, Inc. (JC Contractor), la parte apelada y el Consejo de Titulares del Condominio Camino Real por cobro de dinero, incumplimiento de contrato, y acción contra el dueño de la obra.[3] En síntesis, el Sr. del Carmen Segura adujo que, en el año 2021, tanto el Sr. Santos como

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 76. Notificada y archivada en autos el 16 de junio de 2025.
[2] *Íd.*, Entrada Núm. 64.
[3] *Íd.*, Entrada Núm. 1.

su compañía JC Contractor lo contrataron para la rendición de su mano de obra en dos proyectos de remodelación; a saber, uno en el Condominio Thomasville Park y otro en el Condominio Camino Real. Según el Sr. del Carmen Segura, en ese acuerdo estipularon que JC Contractor iba a hacerle entrega de una suma de aproximadamente $37,000.00 por los materiales y la mano de obra. Indicó, sin embargo, que JC Contractor no pagó la cantidad señalada, por lo que la adeudaba. De igual modo, expuso que, como dueños de los proyectos, los Consejos de Titulares también eran responsables de forma solidaria por la amortización de dicha suma de dinero.

Por su parte, la parte apelada radicó una *Contestación a Demanda* el 14 de septiembre de 2022 donde levantó sus defensas afirmativas y solicitó del foro primario que declarara no ha lugar la demanda.[4] En lo pertinente, adujo que no le debía cuantía alguna al Sr. Santos ni a JC Contractor; más el 5 de marzo de 2025, canceló el contrato de arrendamiento de obra suscrito con JC Contractor.

Luego de múltiples trámites procesales, la parte apelada presentó una *M[o]ci[ó]n Solicitud de Sentencia Sumaria* el 17 de octubre de 2024.[5] Expresó que el Sr. del Carmen Segura arguyó tener un contrato con JC Contractor para realizar trabajos en el Condominio Thomasville Park, empero nunca presentó copia del

---

[4] *Íd.*, Entrada Núm. 14.
[5] *Íd.*, Entrada Núm. 64.

acuerdo. Asimismo, reiteró que, al momento de la reclamación de epígrafe, la parte apelada no le adeudaba nada a JC Contractor, lo cual constituía un requisito indispensable para que el Sr. del Carmen Segura antepusiera contra ella la excepción que emanaba del Artículo 1374 *del "Código Civil de Puerto Rico" de 2020* (Código Civil de 2020), Ley Núm. 55 del 1 de junio de 2020, según enmendado, 31 LPRA sec. 10271,[6] previamente el Artículo 1489 del derogado *"Código Civil de Puerto Rico" Edición de 1930* (Código Civil de 1930), según enmendado, 31 LPRA ant. sec. 4130. Por tal razón, la parte apelada suplicó del TPI la desestimación de la demanda, mediante sentencia sumaria, con la imposición de honorarios por temeridad en contra del Sr. del Carmen Segura.

El 9 de diciembre de 2024, el Sr. del Carmen Segura radicó una *Oposición a Solicitud de Sentencia Sumaria* en la cual solicitó que se denegara la petición de sentencia sumaria.[7] De acuerdo al Sr. del Carmen Segura, existían tres hechos en controversia, o sea, 1) si el Sr. del Carmen Segura cumplió con los trabajos de reemplazo y reparación de tejas en los techos del Condominio Thomasville Park incluyendo las labores y los materiales; 2) si la parte apelada le adeudaba a JC Contractor por los trabajos de reemplazo y reparación de tejas en los techos del Condominio Thomasville Park;

---

[6] En la presente controversia aplican los artículos del Código Civil de 2020, *supra*, por ocurrir los hechos pertinentes durante su vigencia.

[7] SUMAC, Entrada Núm. 73.

y 3) si el Sr. del Carmen Segura tenía derecho a presentar una reclamación directa de cobro de dinero contra la parte apelada, conforme el Artículo 1489 del Código Civil de 1930, *supra*, ant. sec. 4130.

Además, el Sr. del Carmen Segura arguyó que, en septiembre de 2021, se enteró que JC Contractor no le podía pagar, puesto que la parte apelada le adeudaba dinero a JC Contractor por el trabajo realizado, y, subsiguientemente, presentó la reclamación de autos en virtud del Artículo 1489 del Código Civil de 1930, *supra,* ant. sec. 4130.

El 13 de junio de 2025, el TPI emitió una *Sentencia Sumaria Parcial* donde declaró ha lugar la solicitud de sentencia que presentó la parte apelada.[8] En su consecuencia, decretó el archivo de las causas de acción radicadas en contra de la parte apelada y condenó al Sr. del Carmen Segura al pago de una suma de $3,000.00 en concepto de honorarios de abogados por temeridad a favor de la parte apelada. Además, ordenó la continuación de los procedimientos en cuanto al resto de los codemandados del pleito de epígrafe.

Inconforme, el Sr. del Carmen Segura presentó ante nos un recurso de apelación el 16 de julio de 2025, y expuso los siguientes señalamientos de error:

---

[8] *Íd.,* Entrada Núm. 76.

**ERR[Ó] EL TPI AL DESESTIMAR LAS RECLAMACIONES CONTRA EL CONDOMINIO CUANDO EXISTE CONTROVERSIA SOBRE LOS HECHOS RELACIONADOS A LA ACCI[Ó]N DE COBRO CONTRA EL DUEÑO POR ESTOS NO PAGARLE AL CONTRATISTA.**

**ERR[Ó] EL TPI AL CONDENAR AL DEMANDANTE PAGAR UNA SUMA DE HONORARIOS DE ABOGADOS POR TEMERIDAD CUANDO EL DEMANDANTE PRESENT[Ó] PRUEBA DE BUENA FE QUE CONTROVIERTE LOS HECHOS RELACIONADOS A LA ACCI[Ó]N DE COBRO CONTRA EL DUEÑO POR ESTOS NO PAGARLE AL CONTRATISTA.**

Por su parte, la parte apelada presentó un *Alegato en Oposición a Apelación* el 26 de agosto de 2025 donde reiteró los mismos planteamientos de su solicitud de sentencia sumaria.

## II.

## A.

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece el mecanismo procesal de la sentencia sumaria. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales y que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este procedimiento, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad o parte de la

reclamación, de esta forma, se promueve la descongestión de calendarios. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

De igual modo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Asimismo, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3(e), dispone que:

> (e) La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

Al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador debe utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, debe

resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Ramos Pérez v. Univisión*, 178 DPR 200, 216 (2010).

Además, nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos tales como la intención, los propósitos mentales o la negligencia. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 278 (2021). Sin embargo, "nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando surge de los documentos que se considerarán en la solicitud de sentencia sumaria la inexistencia de una controversia en torno a los hechos materiales". *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993-994 (2024).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión, supra*, pág. 213. Además:

[U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria.

*Ramos Pérez v. Univisión, supra*, págs. 213-214 (*citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, Forum 3, 1987, pág. 8).

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia real en cuanto a algún hecho material a la controversia y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. De esta manera, central entre las responsabilidades de quien se opone a una solicitud de sentencia sumaria se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón, supra*, pág. 44. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *León Torres v. Rivera Lebrón, supra*, pág. 44. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe

proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *Ramos Pérez v. Univisión*, *supra*, pág. 215; véase además, *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007).

En esa misma línea, al evaluar una moción de sentencia sumaria, "los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos —sean o no parte de la solicitud de sentencia sumaria— de los cuales surjan admisiones hechas por las partes". *Mejías v. Carrasquillo*, 185 DPR 288, 300 (2012). De igual modo, al determinar si existen hechos en controversia que impiden dictar una sentencia sumariamente, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Cruz Marcano v. Sánchez Tarazona*, *supra*, pág. 550. Solo procede dictar dicha sentencia "cuando surge claramente que el promovido no puede prevalecer y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la

contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra,* R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.

Por otra parte, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b), señala que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a) de dicha regla; una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

De otra parte, en *Meléndez González et al. v. M. Cuebas, supra,* págs. 117-118, el Tribunal Supremo delineó el estándar que el

Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte que se opuso a la petición de sentencia sumaria, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no puede tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni puede adjudicar los hechos materiales en controversia.

En segundo lugar, prescribió que el Tribunal de Apelaciones debe revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplen con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra. Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia y,

de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones debe revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 119.

**B.**

Como norma general, "los contratos sólo producen efecto entre las partes que los otorgan y sus herederos". J. R. Vélez Torres, *Curso de Derecho Civil*, 1ª ed. rev., San Juan, 1990, T. IV, V. II, pág. 375; véase además, Artículo 1209 del Código Civil de 1930, *supra*, ant. sec. 3374; Artículo 338 del Código Civil de 2020, *supra*, sec. 6301.[9] Sin embargo, a modo de excepción a dicha regla general, el antiguo Artículo 1489 del Código Civil de 1930, *supra*, ant. sec. 4130 (Artículo 1374 del Código Civil de 2020, *supra*, sec. 10271), "trae en cierta forma al contrato a un tercero, esto es, a una parte que no figuró en el contrato original celebrado entre el dueño y el contratista

---

[9] El Artículo 338 del Código Civil de 2020, *supra*, sec. 6301, dispone que "[e]l negocio jurídico, sea unilateral o bilateral, solo produce efecto para su autor. El efecto se extiende a los sucesores, universales o particulares, salvo que se refiera a derechos u obligaciones no transmisibles".

-aquella que puso trabajo o materiales en la obra". J. R. Vélez Torres, *op. cit.*, pág. 375. Este derecho y acción se funda en motivos de equidad "por no ser lícito que dueño o empresario, o ambos, hasta por fraudulenta confabulación, se enriquezcan dañadamente con el esfuerzo o la aportación impagada de operarios y materialistas". J. R. Vélez Torres, *op. cit.*, pág. 375; *Goss, Inc. v. Cycrex Const. & Co., S.E.*, 141 DPR 342, 357 (1996).

Específicamente, el Artículo 1489 del Código Civil de 1930, *supra,* ant. sec. 4130, expone que "[l]os que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación". Similarmente, el Artículo 1374 del Código Civil de 2020, *supra*, sec. 10271, indica que "[l]os que ponen su trabajo y materiales en una obra por precio alzado, tienen acción contra el comitente hasta la cantidad que este adeuda al contratista cuando se hace la reclamación". *Goss, Inc. v. Cycrex Const. & Co., S.E., supra*, pág. 357. En otras palabras, esta disposición les "concede a los obreros y materialistas una *acción directa contra el comitente o dueño de la obra,* en el supuesto de impago por parte del contratista hacia ellos". *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 147 (2008) (Énfasis suplido en el original). Es meritorio expresar, no obstante, que la acción derivada del Artículo 1374 del Código Civil de 2020, *supra,* sec. 10271

(antiguo Artículo 1489 del Código Civil de 1930, *supra,* ant. sec. 4130) se trata de una acción directa a favor de los materialistas y los obreros, y no se trata de una acción subrogatoria al amparo del Artículo 1222 del Código Civil de 2020, *supra,* sec. 9631 (antiguo Artículo 1064 del Código Civil de 1930, *supra,* ant. sec. 3028). *P.R. Wire Prod. v. C. Crespo & Assoc., supra*, págs. 149-150. Por esa razón, los materialistas y los obreros poseen dos limitaciones. Primero, la cuantía de la reclamación de estos contra el dueño de la obra está circunscrita a la cantidad que este le adeude al contratista conforme al contrato de construcción, al momento en que se realiza la reclamación, ya sea extrajudicial o judicialmente. *P.R. Wire Prod. v. C. Crespo & Assoc., supra*, pág. 149. "Pero, debe quedar claro que, si al iniciarse la reclamación, ya el dueño había liquidado el contrato y nada adeudaba al contratista, no procede la acción". R. Vélez Torres, *op. cit.,* pág. 374; véase además, *Montalvo & Comas Electric Corp. v. E.L.A.*, 107 DPR 558, 563-564 (1978). Segundo, los suplidores de materiales, al igual que los obreros, no adquieren ante el dueño de la obra más derechos que los que tenía el contratista. J. R. Vélez Torres, *op. cit.,* pág. 376; *P.R. Wire Prod. v. C. Crespo & Assoc., supra*, pág. 149; *Goss, Inc. v. Cycrex Const. & Co., S.E., supra,* pág. 353.

## C.

La Regla 44.1(d) de Procedimiento Civil de Puerto Rico, *supra*, R. 44.1(d), regula lo relacionado a los honorarios de abogados por temeridad. En lo pertinente establece:

(d) *Honorarios de abogado.* En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

La temeridad es "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables". *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 504 (2010). Es decir, cuando una parte perdidosa " 'por su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, los gastos e inconvenientes de un pleito' ". *Asociación de Salud Primaria de Puerto Rico, Inc. v. Estados libre Asociado*, 2025 TSPR 75 (*citando a González Ramos v. Pacheco Romero*, 209 DPR 138, 149 (2022)). También se manifiesta cuando la actitud de la parte afecta el buen

funcionamiento, al igual que la administración de la justicia, sujetando al litigante inocente a una ordalía judicial innecesaria. *Asociación de Salud Primaria de Puerto Rico, Inc. v. Estados libre Asociado, supra*; *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).

Por ende, esta imposición de honorarios tiene el propósito de disuadir la litigación frívola y fomentar mediante transacciones la compensación a la parte victoriosa del pleito por los daños económicos y molestias causados por la temeridad de la otra parte. *Fernández v. San Juan Cement Co., Inc., supra*, pág. 722. Una vez que el foro sentenciador concluye que una parte ha actuado de manera temeraria, corresponde la imposición de honorarios de abogado. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). Esta determinación descansa en la sana discreción del tribunal, por lo cual los foros revisores solo intervendrán cuando de tal actuación surja un claro abuso de discreción. *Asociación de Salud Primaria de Puerto Rico, Inc. v. Estados libre Asociado, supra*; *Marrero Rosado v. Marrero Rosado, supra*, pág. 505.

**III.**

En el caso de marras, nos toca dirimir si existían hechos en controversia relacionados a la reclamación de cobro de dinero contra la parte apelada, y si incidió el foro primario al condenar al Sr. del

Carmen Segura al pago de una suma de honorarios de abogado por temeridad.

A juicio del TPI no existía controversia en cuanto a que la parte apelada canceló el contrato con JC Contractor el 5 de marzo de 2021, según el Artículo 1077 del Código Civil de 2020, *supra*, sec. 9012. Expuso que, tras la cancelación del acuerdo, la parte apelada cesó su relación con JC Contractor, sin realizar pago adicional al depósito inicial que entregó el 20 de agosto de 2020 ni quedó pendiente deuda alguna entre las partes. Además, indicó que el Sr. del Carmen Segura admitió haber realizado su reclamo contra la parte apelada por medio de la demanda radicada el 27 de abril de 2022, y no alegó ni evidenció qué cantidad de dinero, si alguna, la parte apelada le adeudaba a JC Contractor al momento de entablar la acción. Lo anterior, cuando era un requisito fundamental para que prosperara la misma. Por tal razón, basándose en el Artículo 1374 del Código Civil de 2020, *supra*, sec. 10271, resolvió que "[u]na vez el dueño de la obra emite el pago final, los trabajadores y materialistas pierden la garantía del Artículo 1374 del Código Civil. *Master Concrete Corp. v. Fraya, S.E.*,152 DPR 616, 636 (2000)".[10] Por último, le impuso al Sr. del Carmen Segura una cantidad de $3,000.00 por honorarios de abogado.

---

[10] SUMAC, Entrada Núm. 76.

Inconforme, el Sr. del Carmen Segura adujo que el foro primario incidió al desestimar las reclamaciones contra la parte apelada cuando existía controversia sobre hechos relacionados a la acción de cobro de dinero; y al ordenarle a pagar una suma de dinero por honorarios de abogado cuando actuó de buena fe.

Por su parte, la parte apelada arguyó que el TPI no incidió en el primer error planteado, ya que no existían hechos en controversia. Además, sostuvo que el foro primario tampoco cometió el segundo planteamiento de error, pues el Sr. del Carmen Segura conocía que la parte apelada no le adeudaba dinero alguno a JC Contractor, y procedió a radicar la reclamación de epígrafe casi dos años después de la cancelación del contrato entre JC Contractor y la parte apelada.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no cometió los planteamientos de error.

Según *Meléndez González et al. v. M. Cuebas, supra,* cumplimos con el primer paso del estándar de revisión de las solicitudes de sentencia sumaria al revisar *de novo* el petitorio sumario junto a los anejos y el escrito en oposición a la solicitud de sentencia sumaria.

Conforme al segundo pilar de dicho análisis, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplieran con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Meléndez González et al. v. M. Cuebas, supra,* pág. 118.

Luego de un examen cuidadoso de la solicitud de sentencia sumaria, colegimos que cumple sustancialmente con los requisitos de forma de la Regla 36 de Procedimiento Civil, *supra*. Aunque, notamos que el Sr. del Carmen Segura no incluyó en la oposición una exposición breve de las alegaciones de la parte apelada, según requerido por el inciso (b)(1) de la Regla 36 de Procedimiento Civil, *supra*, R. 35(b)(1), somos de la opinión que no procedería revertir la determinación apelada de forma automática.

Habiéndose atendido los primeros dos eslabones del análisis apelativo sobre las solicitudes de sentencia sumaria, debemos evaluar, como tercer paso, si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles están incontrovertidos.

Del expediente del caso se desprende que las determinaciones de hechos formuladas por el TPI surgen incontrovertidamente del récord. La parte apelada incorporó en su solicitud de sentencia sumaria prueba fehaciente para probar los hechos incontrovertidos señalados incluyendo documentos y declaraciones juradas.[11] En particular, de la minuta del 18 de febrero de 2021, se desprende que el Sr. del Carmen Segura estuvo presente en la reunión de la Junta

---

[11] *Íd.*, Entrada Núm. 64, *Minuta de reunión del 18 de febrero de 2021.*

de Directores del Condominio Thomasville Park. Durante dicha reunión, se discutieron las deficiencias del proyecto, y el Sr. Santos, como el presidente de JC Contractor, abarcó el asunto de la cancelación del contrato. Específicamente, expresó "[e]stoy de acuerdo si ustedes lo desean, de <u>dejar el contrato hasta aquí</u> y sentarnos a cuadrar determinar [sic] si ustedes me deben o yo les debo".[12] (Énfasis suplido). Igualmente, surge de la carta del 3 de mayo de 2021, cursada al Sr. Santos por parte de la parte apelada, que "[e]n vista del incumplimiento con sus obligaciones contractuales y considerando que ni sus promesas para remediar las deficiencias ha cumplido, <u>la Junta de Directores de Thomas Ville Park decide aceptar la opción presentada por usted en la reunión del 18 de febrero del 2021 de cancelar su contrato</u>".[13] (Énfasis suplido).

Recuérdese que, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *León Torres v. Rivera Lebrón, supra*, pág. 44. De esta forma, dicha parte no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *Ramos Pérez v. Univisión, supra*, pág.

---

[12] *Íd.*
[13] *Íd.*, *Notificación de cancelación de proyecto.*

215; *Cruz Marcano v. Sánchez Tarazona, supra*, pág. 550. Evaluada la oposición a la solicitud de sentencia sumaria, es la apreciación de esta Curia que no existe controversia respecto a que el Sr. del Carmen Segura no demostró que la parte apelada poseía una deuda al momento de radicar la demanda de epígrafe contra dicha parte. De hecho, no presentó ni un ápice de prueba al respecto. Tampoco existe controversia sobre que el Sr. del Carmen Segura le reclamó por primera vez a la parte apelada una suma de dinero mediante la presentación de la reclamación judicial de epígrafe, el 27 de abril de 2022. Asimismo, lo expresó el Sr. del Carmen Segura en su *Declaración Jurada*: "32. [y]o le notifiqu[é] al Condominio sobre la cantidad adeudada mediante la presentación de la reclamación judicial en abril de 2022, después de enterarme en septiembre de 2021 que el Condominio no le pagó a Santos y JCR".[14] (Énfasis suplido). Por lo tanto, no existiendo hechos en controversia sobre los hechos materiales relacionados a la causa de acción directa contra la parte apelada, el foro primario no incurrió en el primer señalamiento de error.

No existiendo hechos en controversia, pasamos al cuarto y último eslabón; es decir, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas, supra,* pág. 119.

---

[14] *Íd.*, Entrada Núm. 73, *Exhibit 1.*

Tal como pormenorizamos anteriormente, el Artículo 1374 del Código Civil de 2020, *supra,* sec. 10271, dispone que "[l]os que ponen su trabajo y materiales en una obra por precio alzado, tienen acción contra el comitente hasta la cantidad que este adeuda al contratista cuando se hace la reclamación". *Goss, Inc. v. Cycrex Const. & Co., S.E., supra*, pág. 357. No obstante, la acción derivada del Artículo 1374 del Código Civil de 2020, *supra,* sec. 10271 (antiguo Artículo 1489 del Código Civil de 1930, *supra*, ant. sec. 4130) trata sobre una acción directa a favor de los materialistas y los obreros, y de una acción subrogatoria al amparo del Artículo 1222 del Código Civil de 2020, *supra,* sec. 9631 (antiguo Artículo 1064 del Código Civil de 1930, *supra*, ant. sec. 3028). *P.R. Wire Prod. v. C. Crespo & Assoc., supra,* pág. 149. Por tal razón, los materialistas y los obreros poseen <u>dos limitaciones</u>. Primero, la cuantía de la reclamación de estos contra el dueño de la obra está circunscrita a la cantidad que este le adeude al contratista conforme al contrato de construcción, <u>al momento en que se realiza la reclamación, ya sea extrajudicial o judicialmente</u>. *P.R. Wire Prod. v. C. Crespo & Assoc., supra,* pág. 149. <u>"Pero, debe quedar claro que, si al iniciarse la reclamación, ya el dueño había liquidado el contrato y nada adeudaba al contratista, no procede la acción"</u>. R. Vélez Torres, *op. cit.*, pág. 374 (Énfasis suplido). Segundo, los suplidores de materiales y los obreros no adquieren ante el dueño de la obra

más derechos que los que tenía el contratista. J. R. Vélez Torres, *op. cit.*, pág. 376; *P.R. Wire Prod. v. C. Crespo & Assoc., supra*, pág. 149.

En el presente caso, la parte apelada aceptó la opción de cancelar el contrato con JC Contractor el 3 de mayo de 2021.[15] Según vertido anteriormente, el Sr. del Carmen Segura le reclamó por primera vez a la parte apelada la suma de dinero que supuestamente los demás codemandados le adeudaban, el 27 de abril de 2022, cuando radicó la demanda.  No obstante, no probó que, en ese momento, la parte apelada poseía una deuda con JC Contractor. En otras palabras, como al iniciar la reclamación ya la parte apelada no le adeudaba a JC Contractor, no procedían las reclamaciones en cuestión contra la parte apelada, tal como resolvió el TPI.

Por consiguiente, no se cometió el error señalado.

Además de archivar las reclamaciones de marras en contra de la parte apelada, el foro primario condenó al Sr. del Carmen Segura al pago de una suma de $3,000.00 en concepto de honorarios de abogados por temeridad. Fundamentó su dictamen en que el Sr. del Carmen Segura presentó el caso de epígrafe contra la apelada, pero era improcedente. Además, resolvió que este conocía del craso incumplimiento de parte de JC Contractor y que la parte apelada no adeudaba nada; participó en reuniones e inspecciones donde se

---

[15] *Íd.*, Entrada Núm. 64, *Notificación de cancelación de proyecto*.

discutió la opción de JC Contractor de cancelar el contrato; conocía que el suplidor de materiales no estaba certificando las etapas del proyecto; y, aun así, optó por radicar el pleito en contra de la parte apelada. Ciertamente, el Sr. del Carmen Segura conocía lo anterior. Por ende, en el ejercicio de su discreción y ante tales circunstancias, el foro *a quo* no erró al condenar a la parte apelada a pagar una cantidad de dinero en concepto de honorarios de abogado. En su consecuencia, el TPI tampoco incurrió en el segundo planteamiento de error.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Sentencia Sumaria Parcial* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones